BURR WAKEMAN, Appellant, v. JOHN DALLEY, impleaded etc., Respondent.

To sustain an action for fraud, founded upon representations made by defendant, it must be made to appear that he believed or had reason to believe, at the time he made them, that the representations were false, or that, without knowledge, he assumed or intended to convey the impression that he had actual knowledge of their truth, and that plaintiff relied upon them to his injury.

This rule is applicable to the case of representations made by a director of a corporation, in the form of published statements and reports, as to its financial condition. Knowledge of all the affairs of the company cannot be imputed to him for the purpose of charging him with fraud.

The case of *Bennett* v. *Judson* (21 N. Y., 238) criticised and questioned.

(Argued January 12, 1872; decided May term, 1872.)

APPEAL from order of the General Term of the Supreme Court in the first judicial district, reversing a judgment in favor of plaintiff entered upon the report of a referee, and ordering a new trial.

This action was for fraud.

The complaint alleged, in substance, that the defendants combined to procure by fraud, from the Comptroller, a charter for the Webster Fire Insurance Company, and for that purpose procured worthless mortgages and made pretended deposits of money to the amount of $150,000, with the understanding that said money should be paid back to its real owners and fictitious mortgages substituted as assets. That by such fraudulent means a charter was obtained and the company was organized. That defendants, who were directors of the company, with intent to defraud plaintiff and others, falsely represented that a cash capital of $150,000 was paid in, and that the stock was worth par. That plaintiff, relying upon such representations, purchased stock to the amount of $30,000. That the stock was, in fact, worthless, etc. Upon the trial, the fraud in the organization of the company was proved substantially as alleged. It appeared, however, that defendant Dalley was

not a party to it, and had no connection with the company until after its organization. That the company was organized in 1854 and commenced business about April 1st, 1855, and Dalley became a director in May thereafter. He first met with the directors in June, 1855. The only representations claimed to have been made by him were statements in the printed business cards of the company, to a portion of which the name of Dalley appeared as director. In these cards was this statement, " cash capital $150,000." A similar statement also appeared in the policies of the company. At the close of plaintiff's evidence a motion was made, on behalf of defendant Dalley, for the dismissal of the complaint as to him; which motion was denied and defendant excepted; other facts appear in the opinions.

The referee found that Dalley entered into no combination to defraud, and made no representations, save those made in the cards and policies issued with his name upon them, with his knowledge. That he did not know the representations were untrue, but had no good reason to believe them true, and made no inquiries to ascertain their truth, but allowed his name to be used without reflection as to the effect, and, as a conclusion of law, that he was liable as much as if he had knowledge that there was no such capital, and judgment was directed against him, which was entered accordingly.

*Walter Edwards, Jr.,* for the appellant. Fraud and deceit in defendants and damage to plaintiff, constitute a good cause of action. (*Pasley* v. *Freeman,* 3 Term R., 51; *Upton* v. *Vail,* 6 J. R., 181; *Barney* v. *Dewey,* 13 id., 224; *Allen* v. *Addington,* 7 Wend., 9; S. C., 11 id., 374; *White* v. *Merritt,* 3 Seld., 352.) From the facts proved and found, the law presumes an intention to deceive. (1 Phil. Ev., 4th Am. ed., 632, and cases cited; 1 Greenl. Ev., § 18, and cases cited; 3 id., §§ 13, 14; *Van Pelt* v. *McGraw,* 4 N. Y., 110; *Bodwell* v. *Osgood,* 3 Pick., 379.) A plea of ignorance as to whether the statements were true or false will not avail

defendant. (1 Story's Eq., § 193, etc., and cases cited; *Bennett* v. *Judson*, 21 N. Y., 238; *Craig* v. *Ward*, 36 Barb., 377; S. C., 3 Keyes, 387; *Sharpe* v. *Mayor*, 25 How. Pr., 389; *Smout* v. *Ilbery*, 10 M. & W., 1 [10]; *Jarrett* v. *Kennedy*, 6 C. B., 322; *Evans* v. *Edmonds*, 13 id., 786; *Randall* v. *Trimen*, 18 id., 786; *Craig* v. *Ward*, 3 Keyes, 387.) Plaintiff was justified in relying on defendant's position, because of his position as director. (*N. H. & D. Bridge Co.* v. *Phœnix Bk.*, 3 N. Y., 156, 164; *Gillet* v. *Phillips*, 13 id., 114–117.)

*Henry Woodruff* for the respondent. False representations, to be actionable, must be made with intent to deceive and defraud. (*Allen* v. *Addington*, 7 Wend., 9; S. C., 11 id., 374; *Zabriskie* v. *Smith*, 3 Kern., 330; *Gallager* v. *Burnell*, 6 Cow., 350; *Young* v. *Covell*, 8 J. R., 19; *Moore* v. *Burke*, 4 F. & F., 277.) The ordinary business card of an insurance company is to be relied on only by those to whom it is in fact addressed. (*Robbins v. Bingham*, 4 J. R., 476; *Walsh* v. *Cailie*, 10 id., 8, 180.)

EARL, C. The plaintiff, in his complaint, alleges fraud and conspiracy in the organization of the " Webster Fire Insurance Company," and in the abstraction of its funds, and charges false and fraudulent representations by the defendants in reference to its condition and capital, by which the plaintiff was deceived and induced to purchase a large amount of stock.

The proof showed that Dalley became a director of the company in May, 1855, long after the company was organized, and more than a month after it commenced business. There was no evidence showing that he had anything whatever to do with the organization of the company, or with the frauds connected therewith, or that he participated in or knew of any fraud whatever. The referee found that he made no verbal representations as to the condition or capital of the company. The only evidence upon which he based his

finding of fraud is, that while Dalley was director of the company, the cards of the company, upon which all the names of the directors, including his name, were printed, had upon them the words and figures " cash capital, $150,000." There is no proof that he had anything to do with printing or circulating these cards, and there is no proof, except what may be inferred from his connection with and position in the company, that he knew of or ever saw one of them. In the consideration of this case I will, however, assume that the cards were printed and circulatd with his assent. It is an elementary principle that, in an action to recover damages for fraudulent representations, the plaintiff must show that he was deceived by and relied upon the alleged representations. If he did not rely upon them, then they did not deceive him or cause him damage. Here the plaintiff was a witness on his own behalf, and testified that before he made the purchase of the stock he called many times at the office of the company and inquired as to the stock, and in answer to such inquiries he was assured by the secretary and others that the stock was all paid in and good. And he testified that he relied upon such representations, and by them was induced to purchase the stock. He also testified that he saw some of the cards in the office of the company before he purchased, but he did not testify that he relied upon them as to the amount of the cash capital, or that he was deceived by them or induced to purchase the stock by any representation printed on them. He stated what he did rely on, and thus negatives the inference that he relied upon the cards. Were the cards of such a character that the court must necessarily infer that the plaintiff was, under the circumstances appearing, influenced by them ? The words " cash capital $150,000," do not necessarily import that the capital of the company was all paid in, or that it was intact, or that the stock was worth par. The terms " cash capital" are sometimes used to signify the nominal capital, and their meaning is at least equivocal. Here was the plaintiff going to the office of the company many times and inquiring of the executive officers carefully

as to the condition of the company, and he was informed by them that the capital was all paid in and was good and worth par, and that the company was doing a good business: and he says that he purchased stock relying upon these representations. Is there room then for an inference that he relied at all upon the cards? Is it probable that, under such circumstances, he placed any reliance upon them? I answer these questions in the negative, and hold that the referee should have nonsuited the plaintiff on the ground that there was no proof that he was deceived by any representation for which the defendant was responsible.

But I go still further. I will assume that the cards were published and circulated by the managing officers of the company with the assent of Dalley, and that the plaintiff relied, in part at least, upon the statement printed on them, that the cash capital paid in was $150,000 at the time he purchased the stock, and I still reach a conclusion adverse to the plaintiff. There is no proof that Dalley knew that the statement was false, or that he made it with intent to deceive any one. Such knowledge and intent cannot be presumed but must be proven. Chief Justice SPENCER, in *Fleming* v. *Slocum* (18 John., 403), says that it is a well settled rule, "that fraud is not to be presumed but must always be proved." The same rule is laid down by Judge WOODWORTH, in *Jackson* v. *King* (4 Cowen, 220), and by Judge COWEN, in *Starr* v. *Peck* (1 Hill, 270), and it is reiterated by Judge DANIELS, in *Marsh* v. *Falker* (40 N. Y., 566), where he says, "in all actions for deceit the presumption is in favor of innocence, and on that account the intent or design to deceive the plaintiff must be affirmatively made out by evidence."

What reason is there here for inferring that Dalley knew that the representation, that the capital was all paid in, contained in the cards, was false, or that he allowed the cards to be printed and circulated for a fraudulent purpose? He knew that the nominal capital was $150,000, and that the law required it all to be paid in before the company commenced business. He found the company doing business and became

a director, knowing nothing of any of the frauds that had been committed. He had no reason to doubt that the capital was intact, and, so far as appears, he had no reason to suspect that the officers of the company had practiced or were practicing any fraud upon the company or upon the public. He was not a member of the executive committee, and he was not one of the managing officers. He was simply a director, and as such attended some of the meetings of the board of directors. As he was a director, must we impute to him, for the purpose of charging him with fraud, a knowledge of all the affairs of the company? If the law requires this, then the position of a director in any large corporation like a railroad, or banking, or insurance company, is one of constant peril. The affairs of such a company are generally, of necessity, largely entrusted to managing officers. The directors generally cannot know, and have not the ability or knowledge requisite to learn, by their own efforts, the true condition of the affairs of the company. They select agents in whom they have confidence, and largely trust to them. They publish their statements and reports, relying upon the figures and facts furnished by such agents; and if the directors, when actually cognizant of no fraud, are to be made liable in an action of fraud for any error or misstatement in such statements and reports, then we have a rule by which every director is made liable for any fraud that may be committed upon the company in the abstraction of its assets and diminution of its capital by any of its agents, and he becomes substantially an insurer of their fidelity. It has not been generally understood that such a responsibility rested upon the directors of corporations, and I know of no principle of law or rule of public policy which requires that it should.

But here it is claimed that there was an unqualified statement made by Dalley on these cards that the company had a cash capital of $150,000, and that he is to be held liable for fraud, even if he did not know that the statement was false. I cannot assent to this. It was formerly understood that, to enable a plaintiff to sustain an action based upon fraudulent

representations, he must prove that the defendant made the representations knowing them to be false, with intent to deceive, and that the plaintiff relied upon them and suffered damage in consequence thereof. The cases in which this extent of proof could be dispensed with were supposed to be rare. (*Young* v. *Covell*, 8 John., 23; *Allen* v. *Addington*, 7 Wend., 9; S. C., 11 id., 374; *Zabriskie* v. *Smith*, 3 Ker., 330; *White* v. *Merritt*, 3 Seld., 352; *Atwood* v. *Small*, 6 Clark & Finnelly, 444.) But a new rule has sometimes been supposed to have been introduced by the decision in the case of *Bennett* v. *Judson* (21 N. Y., 238). The rule, as stated in the head note to that case, is as follows: " One who, without knowledge of its truth or falsity, makes a material misrepresentation, is guilty of fraud as much as if he knew it to be untrue." This statement of the rule is not accurate without a number of important qualifications; and upon the facts, as they are reported in that case, I entertain serious doubt whether the case was properly decided. It was an action of fraud in the sale of lands situated in the States of Indiana and Illinois. The sale was made by one Davis, as the agent of the defendant, and it appeared that neither the defendant nor Davis had any personal knowledge in respect to the lands, but that the representations made by the latter were but a repetition of statements made to him by a brother of the defendant, who had formerly owned the lands, and who made such statements from information derived from persons residing in those States, and whom he employed as agents for the payment of taxes. The statements alleged to be fraudulent were made in general terms, without referring to any other person as authority for their truth. There was evidence tending to show that the defendant and his agent were both ignorant that the description given by the latter of the land was false. It will thus be seen that the defendant was made liable for the representations of his agent, which he believed, and had reason to believe, to be true, as the agent gave the same description of the land which he had received from defendant's brother, who, he had every reason to suppose, was well

acquainted with the condition and situation of the land. If upon such a state of facts a defendant could be held for fraud, then it may well be that Dalley in this case ought to be held; and the rule thus inaugurated, if carried out to its logical consequences, would wipe out the distinction between actions of warranty and actions of fraud in the sale of property—a distinction founded upon principle and always recognized in the law. But there must have been facts in that case which do not appear in the statement of the case, as the learned judge writing the opinion says, that the statements of the agent "were so minutely descriptive of the land that on their face they clearly imported knowledge of the facts on the part of the person making them, and they were not materially qualified by a reference to any person as the source of information." Upon such a state of facts the defendant was properly held liable, upon the principle that his agent assumed or intended to convey the impression that he had actual knowledge of the truth of the representations which he made, though he knew that he had no such knowledge. If the facts of the case warranted the application of this principle, then it was properly decided, and it is reconcilable with subsequent decisions in the same court.

The case of *Bennett* v. *Judson* was somewhat criticised in the case of *Craig* v. *Ward* (3 Keyes, 387). That was an action of fraud in the sale of a mortgage, and the proof was clear that the agent of the owner in making the sale represented what he knew to be false, and hence it was unnecessary in that case to invoke the broad doctrine laid down in *Bennett* v. *Judson* to sustain a judgment in favor of the plaintiff. But Judge HUNT, writing the opinion of the court, says of the decision in that case, that it " destroys the distinction between fraud and negligence, which I suppose to be well established, and I am not prepared to reiterate it in a case which does not require it." In the case of *Marsh* v. *Falker* (40 N. Y., 562), the defendant was sued for falsely representing that one Roher was perfectly good for $17,000 or $18,000 in property in Syracuse, while he was in fact insolvent. The

plaintiff recovered at the circuit, but the General Term set aside the verdict, and its order was affirmed by the Court of Appeals. There was an unqualified statement as to the responsibility of Roher, and yet it was held that the defendant could not be made liable without showing that he knew the representations to be false and intended by them to deceive, or that he assumed to have knowledge of their truth, knowing that he had no such knowledge. Speaking of the case of *Bennett* v. *Judson*, Judge GROVER says that it was decided upon the ground that the agent assumed to know that the representations made by him were true, while it was proved that he did not know, and thus he was shown to have been guilty of a falsehood.

But since the argument of this case, the cases of *Meyer* v. *Amidon* and *Oberlander* v. *Spiess* (45 N. Y., 169, 175) have been published. By these cases the rule applicable to actions of fraud has been relieved of the uncertainty and confusion produced by the case of *Bennett* v. *Judson*. They lay down the rule that an action founded upon the deceit and fraud of the defendant cannot be maintained in the absence of proof that he believed or had reason to believe at the time he made them that the representations made by him were false, and that they were for that reason fraudulently made, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. The rule as thus laid down is to be applied to this case. Here there was no proof that Dalley knew the statement upon the cards to be false or that he had reason to believe it to be false, and it is too much to say that the statement imports that all the directors had knowledge of its truth. But even if it did, Dalley had such knowledge as authorized him in good faith to make the statement. He knew the nominal capital was $150,000 and that it must have been all paid in before the company commenced business. The company had been in business but a few months, and he had no knowledge of any frauds that had been perpetrated on it, and had no reason to suspect that its capital was impaired.

I therefore find abundant reason for affirming the order of the General Term.

GRAY, C. When the plaintiff rested his case the only evidence in it connecting Dalley with the. transactions of the company was that, in April, 1855, long after its organization had been completed, he was elected one of its directors, and, as such, attended during the following summer three meetings of its board; at neither of which anything appears to have been said or done indicating any deficiency in its capital. It also appeared that cards were issued by the company stating its cash capital at $150,000; but when issued, or to what portion of them Dalley's name was attached, does not appear. Six were produced in evidence, upon two of which Dalley's name appeared, and upon four it did not. There was no evidence that the plaintiff was influenced by those upon which Dalley's name appeared. One witness testified that he took from the officer of the company one of those cards, and spoke of or read from it to the plaintiff "cash capital $150,000;" but he did not state, nor did it appear, that Dalley's name was upon it; or, if it was, that the fact of its being there was brought to the attention of the plaintiff; and what is more, when one of the cards produced in evidence, having upon it the name of Dalley, was exhibited to the witness he said he would not swear that it was one of those he took from the office. The plaintiff, as a witness in his own behalf, testified that in May, June and July, 1855, Hart and Blaisdell gave him cards at the company's office like those produced in evidence, but he did not say which description of cards they gave him; their names were upon each kind. But assume that the name of Dalley was also upon them, it does not appear that the plaintiff was influenced by it. The only statements which, from his own evidence, are shown to have influenced him, were those made by Blaisdell and Hart, the publication of Barnes and the statements of Harris. I am, therefore, of opinion that the court erred in denying the motion to dismiss the complaint as against Dalley, as well

upon the ground that the evidence was insufficient to prove that Dalley made any representations, innocent or otherwise, which were communicated to the plaintiff, as upon the ground that if the plaintiff had been shown one of the cards with the name of Dalley upon it, there is no evidence that it influenced his action.

The order of reversal should be affirmed.

All concur.

Order affirmed and judgment absolute against plaintiff, with costs.