Church, Ch. J.
The first question proper to consider is whether it was error to refuse a nonsuit as to the defendant Corning. His name was not appended to the report, which it is claimed contained false statements, and of course he is not liable on that account. The only ground of action claimed against him is that set forth in the first count of the complaint, which is in effect that the plaintiff was induced to loan to The Iron Mountains Company, of which the defendants were directors, $45,000 by false and fraudulent representations. It is alleged that the creation of the company was a fraudulent scheme entered into by the defendants for the pur pose of deceiving the public; that property of comparatively insignificant value, transferred by some of the defendants, was represented by a capital of $2,000,000; that the defendants were directors of the company, and issued a prospectus containing exaggerated and false statements of the resources of the company, and especially of the value of the mines and the quantity and quality of the iron ores contained therein, and the expense of working the same, and the profits to be realized therefrom.
To maintain an action for obtaining money or property by fraudulent representations, it must be shown that the person charged made the representations, that they were false to his knowledge, and that the representations were relied upon, and were the inducing cause for parting with the property. There is a significant weakness in the plaintiff’s case to establish the first branch of the rule of liability against the defendant Corning. He had no interest in the property transferred to the company, and did not participate in its organization. It does not appear that he ever attended a meeting of the directors, or that he was ever in Essex county where the property is located, or in the office in Hew York *406 where the financial business was transacted, and, as to the prospectus, which contains the principal alleged false representations, it does not appear that he ever saw it or knew of its existence. The only evidence against him was that he was named as a director, and 100 shares of stock were issued in his name on the books of the company, the certificates of which were mailed to him. But for the inference which may result from the admission in his answer that he was a director. there would be no evidence that he knew that he occupied that position. We think the evidence was insufficient to maintain a charge of fraud.
The mere fact of being a director and stockholder is not per se sufficient to hold a party liable for the frauds and misrepresentations of the active managers of a corporation. Some knowledge of and participation in the act claimed to be fraudulent must be brought home to the person charged. (51 N. Y., 27.) The pamphlet or prospectus was, in fact, printed before the organization of the company, and was. mainly prepared by one Remington, who was the active promoter and manager of the company; but that Mr. Corning had any connection with it or knowledge of its existence, is not shown.
Again, there is no evidence that he knew that any of the statements contained in the pamphlet were false. If he knew of them they might have deceived him, for aught that appears, as well as the plaintiff. The plaintiff, as' he swears, loaned his money upon certain statements of Remington, and upon faith in the names mentioned as directors, but he made the loan to the company and not to the directors. He had no right to rely upon their pecuniary responsibility, from the fact of being directors. Ho such responsibility attaches to the office. It is only when a director lends his name and influence to promote a fraud upon the community, or is guilty of some violation of law or other mismanagement, that he is personally liable. When this is shown, he should be held to a strict rule of accountability. Hone of these things are shown against Mr. Corning.
*407 The learned judge submitted the case as to him solely because “ his name was published as a trustee, and a certificate of stock was issued to him.” We do not think this sufficient to authorize a verdict based upon fraudulent representations.
If the defendants had confederated together to create a fraudulent corporation, the use of their names as directors by their consent, to give it credit with the public, would have presented a different question; but, although alleged, this charge was not relied upon, and the case was submitted upon the representations contained in the prospectus.
As to the other defendants there is more difficulty. The evidence was sufficient against them to go to the jury upon the fraud. We must assume that the verdict was rendered upon the first count against all the defendants; although the court ruled, as matter of law, that the other defendants were liable under the fifth count of the complaint, which was .to enforce the liability created by the fifteenth section of the act of 1848, as amended by the second section of the act of 1853, upon -the ground that material statements in the report of 1870 were false. The court charged the jury, in effect, that if they found the fraud, to- render a verdict against all the defendants; if not, to render a verdict in favor of the defendant Corning, and against the other defendants, under the fifth count; and the jury found against all under the first count, and the rulings at the trial are therefore brought in review as to the other defendants.
The two principal errors claimed on the trial are, first, that illegal evidence was admitted, and second, that it does not appear that the plaintiff relied upon any representations for which the defendants are responsible. The evidence is quite voluminous, and is made up largely of the representations and statements of Remington, who, as before stated, was the chief manager of the company. These statements and representations were incompetent as evidence against the defendants in this action. He was the agent of the company, but was not their agent as individuals, and had no power to bind *408 them by any statements he might make (7 Paige, 120); much less for false and fraudulent statements.
It is trae that the judge told the jury in his charge that the defendants were not liable for his statements to which they were not privy; but this did not remove the influence which the evidence must have had upon the minds of the jury. The case was tried upon the theory that these statements were competent; not only those made to the plaintiff, but to other persons, about the time of the transaction ; and the remark of the judge was qualified to statements to which the defendants were privy, and did not specify which of the numerous statements came within the qualification and which did not. This evidence constituted, apparently, the most important given, and must have made a serious impression, which the remark of the judge in his charge could not eradicate: Within the principle decided in 19 Hew York, 299, this error was not obviated.
■ The second ground of error is also a serious one, and was involved in the motion for a nonsuit made on behalf of all the defendants. The representations must not only be ma'de by the party charged and be false to his knowledge, but they must be relied upon and be the inducing cause of parting with the property. The plaintiff was a witness in his own behalf, and stated that the loan was applied for by one Schubarth, a friend of his who desired to negotiate the loan to enable him to obtain a prominent position in the company; and he presented a letter addressed to himself, from Remington, giving a somewhat glowing account of .the prospects of the company, and stating the securities, etc., which would be furnished for the loan. He then testified: “ Upon looking over the statement of Hr. Remington, and at that hook with the names attached to it (the prospectus), I thought well of it, and Mr. Schubarth said to me it would give’him position in the company. I felt friendly to him, and I said I would' make inquiry the next day, and give him an answer.” He did consult with a friend about it, and then said: “ Upon the fact of such individuals being connected with the directory, I told Mr. Schubarth I *409 would make the loan.” It seems, however, that he desired to know how much stock the directors owned, and Schubarth procured from Bemington another letter containing the information. The plaintiff then testified : “Upon receipt of that letter I felt satisfied, and said to Schubarth that I would make the loan, and that he could make what arrangements he thought proper. He told me it would put him in a respectable position with the company.” When he went with his attorney to consummate the|loan, Bemington made some other representations about the quality of the ores, and showed specimens of iron made from it, and exhibited a topographical survey of the mines. This was the substance of all that took place prior to making the first loan of §35,000. The plaintiff was then asked, “ Would you have made the first loan which you made to the Iron Mountains Company except for the representations that you have stated were made to you ? ” To which he answered, “ Never.” Upon this evidence was the jury authorized to find that the plaintiff relied upon and parted with his money upon the faith of the representations contained in the book, or prospectus, assuming that the defendants were responsible for them? The plaintiff does not say that he read the statements in the book, nor that he relied upon any contained therein. The only mention of the book in his evidence is that, after looking over Bemington’s statement and at the look with the names attached, he thought well of it; but that the contents of the book did not seriously impress his mind is evident from his next statement, that, upon the fact that such names were connected with the directory, he told Schubarth that he would make the loan, and, upon the receipt of Bemington’s next statement, he felt satisfied, and unqualifiedly agreed to make it; and the only other representations were those of Bemington at the time the loan was consummated. When he said he would not have made the loan but for the representations made to him, it would be a strained and unnatural construction of the evidence to say that he referred to the *410 statements in the book. Collating all that the plaintiff said, the natural if not the necessary inference is that he was induced to make the first loan partly to aid his friend Schubarth, partly from the well-known character of the directors, but mainly from the representations of Remington, to say nothing of the prospect of future profits from the stock and bonds transferred to him ; but it is difficult to infer that the statements in the book were either known to him or were influential in inducing him to make the loan.
It cannot be claimed that the plaintiff was induced to believe that anything like $2,000,000 had actually been paid in as capital, as the second letter of Remington, upon the receipt of which lie was satisfied to loan the money, distinctly stated that but $250,000 had been paid for all the property, and about $100,000 for buildings and machinery; and although this statement was probably an exaggeration, it repelled the idea of reliance upon the .large capital specified. The element of reliance upon the alleged representations necessary to sustain the action was within the power of the plaintiff, if true, to establish. If he was deceived by the representations in the prospectus, and was induced thereby to loan his money, he should have so stated. This he did not do, but did state substantially that other representations and circumstances, for which the defendants were not responsible, furnished the motive for loaning the money.
Such an action cannot be sustained upon misplaced confidence induced by vague surmises. The rules of law require a reasonable degree of certainty as to each requisite necessary to constitute the cause of action, viz.: representations, falsity, scienter, deception and injury.
The evidence that the plaintiff was deceived by the statements in the book was, to say the least, very slight; but as the errors in receiving evidence entitle the defendants to a new trial on this- branch of the case, it is unnecessary to determine whether it was sufficient to justify its submission to the jury, and it is equally unnecessary to notice other exceptions taken on the trial. •
*411 It is, however, insisted by the learned counsel for the plaintiff, that if this court concurs in the opinion expressed by the judge, that the defendants (except Corning) were liable under the fifth count, judgment should be affirmed, notwithstanding the errors committed on the trial in attempting to establish a cause of action under the first count. This presents a somewhat novel question. The causes of action are entirely different. The first is upon a common-law liability for fraud and deceit; the fifth count is for a statutory penalty. In the former, the injury proved is the criterion of damages, which may be much less than the amount of the debt, unless a ease for exemplary damages is shown, when the recovery may be much more than the debt; while in the latter no actual damages need be shown, the recovery is for the amount of the debt as a penalty, no more and no less.
It is urged by the defendants that the judgment, if affirmed, would be based upon no verdict, but would be in effect an original judgment in this court upon a new cause of action. This court is authorized to reverse, affirm or modify the judgment appealed from, as to any or all the parties (Code, § 330), but does that authorize the court to reverse the judgment as to all the defendants, grant a new trial as to one, and order judgment against the other, for a cause of action which the jury did not pass upon, although they might have done so ? The tendency of courts is to disregard mere form and reach the substance; and it is a general rule that errors or mistakes upon the trial will not entitle a party to a new trial, if, upon the undisputed facts, the plaintiff is entitled to judgment as matter of law.
Although the causes of action were different, they are to be deemed properly united, and they relate to the same general transaction. They both sound in tort; and upon the assumption that, as matter of law, the plaintiff was entitled to judgment against the three defendants, and the court below should have so directed, this court may perhaps affirm the judgment, and regard the errors committed as immaterial. *412 But -my associates think otherwise, and are of opinion that the questions arising under the fifth count are not before this court upon this appeal. It follows that there must be a new trial as to all the defendants.
Allen, Folger, Bapallo and Andrews, JJ., concur for reversal and new trial as to all the defendants.
Grover, J., concurs in reversal as to Corning, but dissents as to the other defendants.
Judgment reversed. •