[No. 1528.]

FOULKS ACCELERATING AIR MOTOR COMPANY, A CORPORATION, RESPONDENT, *v.* J. H. THIES, APPELLANT.

FRAUDULENT REPRESENTATIONS—SUBSCRIPTION TO STOCK—ENFORCEMENT OF. Where plaintiff filed an application for a patent, and appointed attorneys to prosecute it, giving them power to alter or amend his specifications, and to transact all business connected therewith, and the application was granted after the specifications were altered and amended, so that the patent as granted differed from the original application, representations by plaintiff that the patent was secured as originally applied for, made to defendant to secure a stock subscription to a corporation, plaintiff's successor in interest, were fraudulent in law, notwithstanding that plaintiff believed them to be true, and he was without knowledge that they were untrue, and that they were made without intent to deceive, and hence such subscription cannot be enforced.

APPEAL from the Second Judicial District Court, Washoe County; *A. E. Cheney*, Judge.

Action by the Foulks Accelerating Air Motor Company against J. H. Thies. From a judgment in favor of plaintiff and order denying defendant's motion for new trial, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*Frank H. Norcross* and *Torreyson & Summerfield*, for Appellant.

*Curler & Curler*, *George H. Foulks*, *W. E. F. Deal*, and *Edmund Tauszky*, for Respondent.

*Frank H. Norcross*, for Appellant:

I. Mr. Foulks was a member of the Nevada Legislature of 1893, and proceeded to interest his colleagues and others in the patent which he represented to them had been allowed him by the patent office. He claimed, as a matter of fact, that his patent covered all of the features originally applied for, and he laid particular stress upon the three features which were rejected. He exhibited a model of his invention at Carson, containing all of these rejected features, and had on exhibition, at the Mechanics' Fair at San Francisco, another model, to which he invited the attention of those he was endeavoring to interest in his enterprise. The defend-

ant in this action relied upon these representations of John P. Foulks, and together with others signed a paper agreeing to take 2,000 shares of stock in a corporation thereafter to be organized, to carry on the business of manufacturing Foulks' wheels. This subscription paper was dated February 25, 1893, and was for about 10,000 shares, and is the subscription held by the lower court to be binding upon the defendant herein.

II.    Articles of incorporation of the plaintiff were filed in the clerk's office of Washoe county, on the 3d day of March, 1893, the one great object of the corporation being to manufacture and sell the air motor, or windmill, claimed by John P. Foulks to have been patented to him as hereinbefore stated, and which he agreed to sell or assign to the corporation in consideration of 60,000 shares of stock in the corporation, the total number of shares being 100,000 shares. The assignment of the said letters patent of John P. Foulks was made to the plaintiff corporation on the 6th day of March, 1893, for the consideration above mentioned.

III.    Notice of a fact to an attorney, when engaged properly in the business of his client, becomes, in law, notice of such fact to the client.    (Am. & Eng. Ency. Law, 2d ed., vol. 1 p. 1144; *Jones* v. *Bamford*, 21 Iowa, 217; *Allen* v. *McCalla*, 25 Iowa, 464, 96 Am. Dec. 56; *Haven* v. *Snow*, 14 Pick. (Mass.) 32.)    Regardless of the fact that the law imputed knowledge of every step in the proceeding to Foulks, there are other facts that show that Foulks knew or had "sufficient reason for knowing," at the time he made his representations to the defendant of the scope of his patent, that it did not cover what he represented.    He was informed by letter in August, 1892, that his application had been rejected "and amended," and that, if further amendments were necessary, they would also be made.    On August 19, 1892, he requested specific information as to the air motors in conflict with his application, and in reply was informed that copies of all the references given would be ordered and sent to him, and by copies is certainly meant copies of the letters patent of the conflicting patents mentioned by the examiner.    Mr. Foulks' letter of September 8, 1892, shows that he had received copies of such conflicting letters patent, one of which he enclosed

in a letter to his attorney, with comments. In the same letter, notifying Mr. Foulks that copies of the references would be ordered and sent to him, was the further information that "the examiner still insisted that the references were proper ones," and that it would be difficult to get it through satisfactorily without some assistance like a model, which the evidence shows was never furnished by Mr. Foulks. Certainly, the matter contained in these communications, taken into consideration with the fact that Mr. Foulks had given his attorneys unlimited power to alter or amend, was sufficient reason for his knowing or believing that his patent had not been allowed as applied for.

IV. "A statement recklessly made without knowledge of its truth, but which is in reality false, is a false statement knowingly made, within the settled rule." (*Cooper* v. *Schlessenger*, 111 U. S. 148; *Henderson* v. *R. Co.*, 17 Tex. 560, 67 Am. Dec. 680; cases cited in 67 Am. Dec. 685; Thompson on Corp., vol. 2, sec. 1388; 8 Am. & Eng. Ency. Law, 642–3, and citations; Cook on Stock and Stockholders, vol. 1, p. 197, secs. 148, 150; Story, Eq. Juris., sec. 193; Cooley on Torts, pp. 497, 499; *Fishback* v. *Miller*, 15 Nev. 435.)

V. Misrepresentations as to property transferred for stock in a corporation renders the transaction void. (*Coffin* v. *Rounsdell*, 110 Ind. 417, 11 N. E. 20; *Coit* v. *Gold & C. Co.*, 119 U. S. 343; *Sickles* v. *Martin*, 44 Hun, (N. Y.) 623; *Blunt* v. *Walker*, 11 Wis. 334, 78 Am. Dec. 709; *Crisholm* v. *Forney*, 65 Iowa, 333; *Tarkar* v. *Wallace*, 6 Dailey, (N. Y.) 364; *Beysich* v. *Lieblu*, 50 Hun, (N. Y.) 606; *Douglas* v. *Ireland*, 73 N. Y. 104; *Boynton* v. *Andrews*, 63 N. Y. 96; *Edwards* v. *Sugar Co.*, 27 La. Ann. 118; *Whitehill* v. *Jacobs*, 75 Wis. 476; 35 N. J. Eq. 501; 20 N. Y. State Rep. 769; 3 N. Y. Supp. 293; Thompson on Corp., vol. 1, sec. 1241; vol. 2, secs. 1606–1623.)

VI. The entire capital of a corporation must be subscribed by *bona fide* subscriptions before the assessments can be made. (Thompson on Corp., vol. 1, secs. 1235, 1241; vol. 2, secs. 1605, 1608, 1724; 1 Cook on Stock and Stockholders, sec. 176, p. 222; *Haskil* v. *Worthington*, 94 Mo. 560; 66 Am. Dec. 257.)

VII. "The fraud which will entitle a subscriber to shares of a corporation to a rescission, may be either of a positive

or negative kind. It may consist either in a suppression of what is true, or in an assertion of what is false." (Thompson on Corp., vol. 2. secs. 1383, 1433.)

VIII. The declarations made by Mr. Foulks concerning his invention were positive declarations that a certain state of facts existed, which did not in fact exist, and which, if he did not already know they did not exist, a very slight effort upon his part would have been all that was necessary to convince him that they did not. Under these circumstances, it is immaterial that he did not know his statements were false, for it was his duty to know it, and in all such cases negligent ignorance has the same weight in the judicial balance as actual knowledge. (Thompson on Corp., vol. 2, sec. 1388, and cases cited in note; Cook on Stock, etc., vol. 1, p. 197, sec. 148; Anson on Contracts, 6th ed. 158; Story, Eq. Juris., sec. 193; Cooley on Torts, pp. 497–499; *Cooper* v. *Schlessenger*, 111 U. S. 148; *Henderson* v. *R. Co.*, 17 Tex. 560, 67 Am. Dec. 680; cases cited in 67 Am. Dec. 685.)

IX. A subscription for stock in a corporation, made before the corporation comes into existence, is not enforceable by or against the corporation unless, when the corporation comes into existence, it accepts the subscriptions either expressly by formal acceptance, or by issue of a certificate to the subscriber, or impliedly by acts amounting to the recognition of the subscriber in the capacity of a shareholder. (Alger on Law of Promotors, etc., of Corporations, secs. 194–217, especially sec. 211, p. 212; *Strasburg R. Co.* v. *Echlernachit*, 21 Pa. St. 220, 60 Am. Dec. 49.)

X. "Repudiation by any act or acts of the subscriber which in law amount to a rescission. as, for example, when the subscriber notifies the corporate authorities that he repudiates the contract, and tenders back his shares, is effective without a suit against the corporation to set the contract aside." (Alger on Law of Promotors, etc., sec. 193, p. 196, and cases cited; Cook on Stock, etc., vol. 1, pp. 201, 208; Thompson on Corp., vol. 2, secs. 1431, 1438–1456; *Upton* v. *Tribilock*, 91 U. S. 45–55; *Cunningham* v. *Edgifield R. Co.*, 2 Head, 10 Tenn. 23; *Upton* v. *Englehart*, 3 Dill. U. S. 496, 505; *Savage* v. *Bartlette*, 78 Md. 561; *Fear* v. *Bartlette*, 32 Atl. Rep. 322.)

XI.  "The burden of proof to establish laches or waiver is on the corporation plaintiff.  In an action for calls on shares, when the defendant pleads that he was induced to take the shares by fraud, it is not for him to show that he repudiated the contract as soon as he became aware of the fraud, but it is for the plaintiff to show that the defendant adhered to the contract notwithstanding his discovery of the fraud."  (Alger on Stock, etc., sec. 190.)

XII.  "The subscriber has a legal right to rely upon a representation of a material existing fact, the truth of which is not known to him.  He is not bound to investigate, unless he has had actual notice sufficient to put him on his guard."  (Alger on Stock, etc., sec. 155; *McLellan* v. *Scott*, 24 Wis. 81; *Mead* v. *Bunn*, 32 N. Y. 275; *Warner* v. *Seymour*, 89 Wis. 290; *Salem Rubber Co.* v. *Adams*, 23 Pick. 256.)

XIII.  In an action to recover damages for misrepresentation it is essential to show that the party who made the misrepresentation had knowledge of its falsity at the time it was made.  But a misrepresentation may be an invalidating circumstance in a contract induced by it, although knowledge of its falsity is not shown.  (Alger on Law of Promotors, etc., secs. 184, 186-187; *Groppengresser* v. *Lake*, 103 Cal. 37; *Marriner* v. *Dennison*, 78 Cal. 202; *Bank* v. *Hiatt*, 58 Cal. 234; *Alvarez* v. *Brannan*, 7 Cal. 503; *Wilcox* v. *University*, 32 Iowa, 367; *Moler* v. *Carder*, 73 Iowa, 582; *Yeater* v. *Hines*, 24 Mo. App. 619; *Kountze* v. *Kennedy*, 147 N. Y. 124; *Gardner* v. *Loan & Trust Co.*, 152 Mass. 201; *Home's Appeal*, 77 Penn. 50; *Swimm* v. *Bush*, 23 Mich. 99; 1 Bigelow on Frauds, 414.)

XIV.  The ground upon which relief is asked is that principle of equity which declares that the wilful misrepresentation of one contracting party which draws another into a contract shall, at the option of the person deceived, enable him to avoid or enforce that contract.  (2 Thompson on Corp., secs. 1382, 1361, 1363, 1364, 1372, and note 3, 1373; *Henderson* v. *R. Co.*, 17 Tex. 560, 67 Am. Dec. 675; *Vreeland* v. *N. J. Stone Co.*, 29 N. J. Eq. 190; *Upton* v. *Englehart*, 3 Dill. U. S. 496; *Farm* v. *Walker*, 3 Dill. U. S. 506; *Mead* v. *Bunn*, 32 N. Y. 275-280; *McLellan* v. *Scott*, 24 Wis. 81, 86; *Eaton* v. *Winnie*, 20 Mich. 156; 4 Am. Rep. 377; *Foreman* v. *Bigelow*, 4 Cliff. U. S. 508.)  The defense is complete when

fraud is shown. (Thompson, *supra*, vol. 2, sec. 1391; 4 Am. & Eng. Ency. Law, 259, 265; *Phila. R. Co.* v. *Derby*, 14 How. U. S. 468; *Henderson* v. *R. Co.*, *supra; Hale* v. *Union M. Co.*, 32 N. H. 295; *N. Y. R. Co.* v. *Schuyler*, 34 N. Y. 50; 11 Wheat. U. S. 59.)

XV. Any misrepresentations or concealments of facts, which materially affect the success of the undertaking, will, as between the company and the person who, on the faith of such misrepresentations or concealments, has been induced to take shares, entitle him to a rescission of the contract; and will be a defense to suits for calls. (Thompson, *supra*, vol. 2, sec. 1424; *Waldo* v. *Chicago R. Co.*, 14 Wis. 575; *Henderson* v. *R. Co.*, *supra; Davis* v. *Dumont*, 37 Iowa, 47; *Water Man. Co.* v. *Seaman*, 53 Miss. 655; *Occidental* v. *Gonzhorn*, 2 Mo. App. 205; *Crump* v. *U. S. M. Co.*, 7 Gratt. Va. 352, 56 Am. Dec. 116; *Rives* v. *Montgomery R. Co.*, 30 Ala. 92.)

XVI. If the evidence is sufficient to satisfy the mind and conscience of the existence of the fraud, it will suffice, although it does not lead to a conviction of absolute certainty. (8 Am. & Eng. Ency. Law, 656, and citations; *Buller* v. *Creditors*, 56 Cal. 600; *Gruber* v. *Baker*, 20 Nev. 476.)

XVII. The purchasers of a patent are not bound by the doctrine of *caveat emptor*. (*Iowa Econ. Heat Co.* v. *American*, 32 Fed. 735; *McKee* v. *Eaton*, 26 Kan. 226; *Peffley* v. *Noland*, 80 Ind. 164.)

*Curler & Curler, George H. Foulks, W. E. F. Deal*, and *Edmund Tauszky*, for Respondent:

I. The rule in regard to cases for rescission of contracts on the ground of fraud was laid down by the Supreme Court of the United States in the case of *Southern Development Co.* v. *Silva*, 125 U. S. 247, as follows (p. 249): "The burden of proof is on the complainant; and, unless he brings evidence sufficient to overcome the natural presumption of fair dealing and honesty, a court of equity will not be justified in setting aside a contract on the ground of fraudulent representations. In order to establish a charge of this character, the complainant must show by clear and decisive proof: First—That the defendant has made a representation in regard to a material fact. Second—That such representation

is false. Third—That such representation was not actually believed by the defendant on reasonable grounds to be true. Fourth—That it was made with intent that it should be acted upon. Fifth—That it was acted upon by complainant to his damage. And, sixth—That, in so acting on it, the complainant was ignorant of its falsity and reasonably believed it to be true. The first of the foregoing requisites excludes such statements as consist merely in an expression of opinion or judgment honestly entertained; and again (excepting in peculiar cases) it excludes statements by the owner and vendor of property in respect to its value."

II. "A purchaser is bound to exercise ordinary prudence and discretion, and, if the means of knowledge are within his power, and he neglects to make the proper inquiry, he loses his remedy against the vendor for any fraudulent representations the latter may make." (*Chapman* v. *Shilleto*, 7 Beav. 149; *Bell* v. *Byerson*, 11 Iowa, 233; *Shermerhorn* v. *George*, 13 Ab. Pr. 315; *White* v. *Seaver*, 25 Barb. 235; *Burton* v. *Willers*, 6 Litt. 32.) In the case at bar, defendant knew that Dewey & Company of San Francisco were the solicitors for the patent, and, after representations were made to him by four of the subsequent directors of plaintiff, and before his first subscription, he went to San Francisco and viewed the model; before his second subscription, he and others sent two directors of plaintiff to San Francisco to construct a windmill who, afterwards, reported to defendant that the invention was a success, and submitted drawings of the invention to him; which, we submit, shows that defendant relied on the results of his own investigation and inquiry as to the merits of the invention, and not on the statements of the inventor.

III. Kerr, p. 82: "Misrepresentation, to be material, should be in respect of an ascertainable fact, as distinguished from a mere matter of opinion. (5 Johns 354.) A representation which merely amounts to a statement of opinion, judgment, probability, or expectation, or is vague and indefinite in its nature and terms, or is merely a loose, conjectural, or exaggerated statement, goes for nothing, though it may not be true, for a man is not justified in placing reliance on it. An indefinite representation ought to put the per-

son to whom it is made upon inquiry. If he chooses to put faith in such a statement, and abstains from inquiry, he has no ground of complaint. Mere exaggeration is a totally different thing from misrepresentation of a precise and definite fact. Such statements  *  *  *  are only expressions of opinion or judgment, as to which honest men may differ materially."

IV.   Bigelow on Fraud, 1888 edition, p. 180:   "So where the gist of an action is a false and fraudulent representation made by the defendant in the course of negotiations, as an inducement to a contract, the plaintiff will have to prove that the defendant knew the representations to be false when he made them, or the equivalent."   *Litchfield* v. *Hutchinson*, 117 Mass. 195:   "And this is not established by showing that, though the defendant believed it to be true when he made it, yet, after the negotiations were concluded, and had been merged in a written contract without warranty, he ascertained it to be false, and neglected to communicate his knowledge to the plaintiff."·

V.   The allegations in the affirmative defense set up in defendant's answer are allegations of actual fraud, and raise an issue of actual fraud only; while all the evidence introduced by defendant on the defense of fraud did not reach beyond an effort to establish constructive fraud, and did not even tend to establish that; but even the proof of constructive fraud would not establish a charge of actual fraud.   Bigelow on Fraud says, at p. 179:   "The fraud alleged must be proved; other fraud will not answer."   (*Jackson* v. *Collins*, 39 Mich. 557.)

VI.   "Where there is some evidence to support the decision, and a motion for a new trial is denied, this court will not interfere."   (*Baxter* v. *McKinlay*, 16 Cal. 76; *Doherty* v. *Enterprise Mg. Co.*, 50 Cal. 187.)   A motion for a new trial on the ground, amongst others, that the evidence was insufficient to justify the verdict, was denied by the lower court.   On appeal, the Supreme Court of California said:   "If there is any evidence to sustain that verdict, this court will not disturb the order of the court below.   For the purpose of determining that question, it will only be necessary to consider such portions of the testimony as are most favorable to the defend-

ant." (*Helm* v. *Martin*, 59 Cal. 61.)   Where there is material evidence to support all the findings of the court, or sufficient to create a substantial conflict, the judgment and order of the court below, refusing a new trial, will be affirmed. (*Stearns* v. *Hooper*, 78 Cal. 341.)

VII.   A corporation may give credit for its stock, as well as for any other property sold by it.   Nor is it necessary that certificates should have been issued.   These only constitute proof of property which may exist without them.   When the corporation has agreed that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon, and that person has agreed to take and pay for them accordingly, he becomes their owner by a valid contract made upon a valuable consideration. (*Mitchell* v. *Beckman*, 64 Cal. 117.

VIII.   Counsel overlooks the distinction between an assessment levied by the board of directors of a corporation for the purpose of paying debts, etc., and a call made upon subscribers to stock to pay for the stock.   Assessments may be levied upon stock that has been fully paid for.   Calls are levied upon stock that has not been fully paid for.

IX.   In the case of *Bailey* v. *Fox*, 78 Cal. 389, which was an action to rescind a contract on the ground of false representations, the Supreme Court of California said, at page 396, that "it is a well-established and just rule of equity that a party, who seeks to avoid a contract for fraud, must rescind the same promptly after the fraud is discovered, or he will be deemed to have waived it."   In that case, four months intervened between the time of the discovery and the time of the offer to rescind, and it was held that it would be entirely inequitable to permit a party to rescind a contract after such a delay, under the circumstances of the case.   It is clear, from the evidence, that defendant made his first alleged discovery in August or September, 1893, and made a second discovery in February or March, 1894.   Kerr on Fraud and Mistake says, at p. 236:   "Whatever is notice enough to excite the attention of a man of ordinary prudence and call for further inquiry, is, in equity, notice of all facts to the knowledge of which an inquiry suggested by such notice, and prosecuted with due and reasonable diligence, would have

led. (*Blaisdell* v. *Stevens*, 16 Vt. 173; *Stanford* v. *Ballou*, 17 Vt. 329.) Notice of this sort is called constructive notice. Constructive notice, as distinguished from actual notice, is a legal inference from established facts, and like other legal presumptions, does not admit of dispute. If a man has actual notice of circumstances sufficient to put a man of ordinary prudence on inquiry as to a particular point, the knowledge which he might, by the exercise of reasonable diligence, have obtained will be imputed to him by a court of equity. The presumption of the existence of knowledge is so strong that it cannot be allowed to be rebutted." Page 238: "The consequences of an actual discovery of the fraud will be imputed to a person who might, by the exercise of reasonable diligence, have made the discovery." (*Parker* v. *Kuhn*, 21 Neb. 413; *Penobscott* v. *Mayo*, 67 Me. 470; *Boyd* v. *Blankman*, 29 Cal. 19; *Gillett* v. *Wiley*, 126 Ill. 310.) "Whatever is notice enough to excite attention, and put a party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." (*Kennedy* v. *Green*, 3 Myl. & K. 722.) "There must be concealment on the part of the defendants, and the fraud must be actual, not constructive." (*Farnam* v. *Brooks*, 9 Pick. 212; *State* v. *Giles*, 52 Ind. 356; *Boyd* v. *Boyd*, 27 Ind. 429; *Wood* v. *Carpenter*, 11 Otto, 140; *Nudd* v. *Hamblin*, 8 Allen, 130.) Appellant here had the means of knowledge, and therefore constructive knowledge, of the alleged fraud, when he was in San Francisco in February or March, 1893, and knew that Dewey & Company were the patent attorneys who had obtained the Foulks patent, and who would naturally have a record of the patent case in their office. The statute of limitations certainly began to run against this defendant in August or September, 1893, when he saw the patent; and any subsequent alleged discoveries, previous to the death of John P. Foulks, or intimations since his death, can avail this defendant nothing.

X. "If a stockholder fails to take the trouble of inquiring into the affairs of a corporation of which he is a member, or attend its meetings, it seems no more than just that his supineness should be construed as an acquiesence in the

proceedings of the majority." (2 Morawetz on Private Corporations, 2d ed. sec. 630.) "Stockholders are chargeable with knowledge of all the acts of the directors which were spread upon the records of the corporation, and of all the facts connected therewith that the inquiry suggested thereby would have disclosed." (*Lady Washington Cons.* v. *Wood*, *supra*.)

XI. "Fraud may be waived and condoned; and a defrauded party must act consistently, or he will lose his right to complain of it." (*Craig* v. *Bradley*, 26 Mich. 369; *Godden* v. *Kimmel*, 99 U. S. 211; *Marsh* v. *Whitmore*, 21 Wall. 184; *U. S.* v. *Flint*, 4 Saw. 57; *Foot* v. *Farrington*, 4 N. Y. 169; Angell on Limitations, sec. 183, note 3; *Harwood* v. *Railroad Co.*, 17 Wall. 81; *Stearne* v. *Page*, 17 How. 819.) "The defrauded party to a contract has but one election to rescind the same. If he once determine his election, it is determined forever. (*Kinney* v. *Kiernan*, 49 N. Y. 164.) Hence, if it be shown that he has at any time after knowledge of the fraud, either by express words or by unequivocal acts, affirmed the contract, his election is irrevocable. (*Kennedy* v. *Thorp*, 51 N. Y. 174.)"

*Frank H. Norcross*, for Appellant, in reply:

I. "A purchaser of a patent right may rely on the representations of the seller as to what is covered by the patent." (*Rose* v. *Hurley*, 39 Ind. 77; *David* v. *Park*, 103 Mass. 501; *Gaty* v. *Holcomb*, 44 Ark. 216; *Tabor* v. *Peters*, 74 Ala. 90; *Page* v. *Dickerson*, 28 Wis. 694; *Fargo Coke Co.* v. *Electric Company*, (author's note) 37 L. R. A. 593. "The representations of an inventor for the purpose of effecting a sale of his invention, may be relied upon." (*Hicks* v. *Stevens*, 121 Ill. 186.)

II. The respondent cites, seemingly with a good deal of satisfaction, the case of *Southern Development Co.* v. *Silva*, 125 U. S. 249, in which it is held: "In order to establish a charge of this character, the complainant must show by clear and decisive proof: First—That the defendant has made a representation in regard to a material fact. Second—That such representation is false. Third—That such representation was not actually believed by the defendant on reasonable

grounds to be true. Fourth—That it was made with intent
that it should be acted upon. Fifth—That it was acted upon
by complainant to his damage, and, sixth, that in so acting
on it the complainant was ignorant of its falsity and reason-
ably believed it to be true." Now, then, without questioning
the applicability of the foregoing rules to the case at bar,
appellant contends that the findings of the lower court show
that all of the above-mentioned requisites exist in this case,
save and except the third, and it is the finding that this
requisite is not established that appellant complains of. Let
us briefly consider this third requisite: "That such repre-
sentation was not actually believed by defendant on reason-
able grounds to be true." Now, then, the party making the
representations must not only actually believe them to be
true, but he must have "reasonable grounds" for so believ-
ing. It is appellant's contention that Mr. Foulks had not
reasonable grounds for believing his representations to be
true. In appellant's former brief was cited the law as held
by the same court that decided the Silva case, *supra*, and by
it we may know what is meant by "reasonable grounds." In
*Cooper* v. *Schlessinger*, 111 U. S. 148, the rule was laid down
that "A statement recklessly made without knowledge of its
truth, but which is in reality false, is a false statement know-
ingly made, within the settled rule."

III.   Counsel for respondent argues that this court should
not disturb the decision of the lower court because of the
well-established rule that where the evidence is conflicting
and there is any substantial evidence in support of the deci-
sion the appellate court will not interfere. But appellant
contends that the rule has no applicability in the present
case, for the reason that upon the main points at issue there
is no conflict in the evidence, and the only difference between
counsel for appellant and respondent is in the legal effect of
the evidence.

IV.   The rule of law applicable to the case at bar, upon
the question of rescission, may fairly be stated as follows:
"Where the case stands simply as a question between the
corporation seeking to retain an advantage acquired through
fraud, and a person who has been defrauded by its agent, the
ordinary rule of equity as to the time which will bar the

person defrauded from claiming a rescission of his contract would obviously apply in the same manner as though the question arose between two natural persons." (*Ashmead* v. *Colby*, 26 Conn. 287; Thompson, vol. 2, secs. 1453, 1452, 1449, 1438; *Fargo Gaslight and Coke Co.* v. *Fargo Gas and Electric Co.*, 4 N. D. 219; 37 L. R. A., 593; see author's note and citations on subject of fraud.)

V. Respondent's contention, that appellant's defense of fraud is barred by the statute of limitations, cannot be well taken. Appellant repudiated his contract on April 19, 1894, which was within the statute of limitations.

### ON PETITION FOR REHEARING.

*W. E. F. Deal, Edmund Tauszky, Benjamin Curler*, and *George H. Foulks*, for Respondent:

I. The constitution of this state (sec. 2, art. VI) provides that the supreme court shall consist of a chief justice and two associate justices, a majority of whom shall constitute a quorum; and that the concurrence of a majority of the whole court shall be necessary to render a decision. It further provides (sec. 8, art. XV) that no judgment of the supreme court shall take effect and be operative until the opinion of the court in such case shall be filed with the clerk of said court. Section 12 of the act concerning the courts of justice of this state, approved January 26, 1865, (sec. 2519, Comp. Laws, 1900) provides that all opinions and decisions rendered by the supreme court shall be in writing, signed by the justices concurring therein, and shall be spread at large on the records of the court kept for that purpose. Section 10 of the same act (sec. 2517, Comp. Laws, 1900) provides that the concurrence of two justices who heard the argument shall be necessary to pronounce any judgment, and, if two justices, who have heard the argument, do not agree, the case shall be reargued. In this case the chief justice is disqualified. The two associate justices heard the argument, and one of them, Justice Belknap, has filed an opinion herein reversing the judgment and remanding the cause for a new trial, while the other, Justice Fitzgerald, concurs in the judgment without concurring in the opinion of Justice Belknap, or filing any opinion of his own. It is evident,

therefore, that the two associate justices do not agree in the reasons for a reversal, and, while they agree in the judgment, we are not informed as to the reasons moving Justice Fitzgerald to concur therein. We respectfully submit that the opinion of one justice is not the opinion of the court, and that Section 8 of Article XV of the constitution has not been complied with by the court in this case; and furthermore, that, as the two justices who heard the argument have not agreed in their reasons for a reversal, the case should be reargued. The opinion of Justice Belknap can hardly be deemed the law of this case, because it is not the opinion of the court. The purpose of the requirement of Section 2 of Article VI of the constitution, that the concurrence of a majority of the whole court shall be necessary to render a decision, was undoubtedly to insure the concurrence of two justices in the establishment of any legal proposition as the law of this state, and the requirement of Section 2519, Comp. Laws, 1900, that all opinions shall be in writing, was certainly enacted so that litigants and the trial court might be informed of the reasons moving the justices to concur in the judgment.

II. The rule is that where an appellate court is evenly divided, the judgment of the lower court is affirmed. (*Santa Rosa City R. R.* v. *Central St. R. R.*, 112 Cal. 436; *Frankel* v. *Deidesheimer*, 93 Cal. 73; *Buco* v. *De Toro*, 88 Cal. 26.)

III. Coming to the opinion itself, we respectfully submit that it is based both upon a misconception of the law and of the issues involved in this case. Justice Belknap recites certain facts found by the district court; among others, "That until subsequent to July 15, 1893, Mr. Foulks believed, and did not have any reason for not believing, that his application for a patent had not been allowed by the patent office as originally made and filed." The opinion then proceeds: "Upon these facts, the question is whether or not the representations were fraudulent in law." "These facts" include the fact that Foulks did not have any reason for not believing that his application for a patent had not been allowed as originally made. Yet the learned justice proceeds, in utter disregard of this fact, which he states is one of the facts upon which his decision depends, and says: "He

(Foulks) knew that amendments had been made  *  *  *. Instead of making the inquiry which the circumstances suggested, he made no effort to inform himself further. Afterwards, when a patent was allowed, instead of ascertaining the extent to which his specifications had been altered or amended by his attorneys under his authority, he represented to defendant and others that a patent according to the original specifications had been granted. Manifestly he did not know whether this statement was true or false." This entirely eliminates the finding that Foulks did not have any reason for not believing that his application for a patent had not been allowed as originally made. The learned justice does not hold that this finding of the district court is not supported by the evidence, but decides the case upon a question of law in disregard of the finding. In the quotation from Judge Cooley's work on Torts, contained in the opinion, that eminent jurist says: "The fraud here consists in the reckless assertion that that is true of which the party knows nothing, and deceiving the other party thereby, and even the actual belief of the party in the truth of what he asserts is immaterial, unless he had some apparently good reason for his belief, such, for example, as the positive statements of others in whom he confided and was innocent of any attempt to mislead." The court below, in its finding, negatives the proposition that there was anything reckless in the statements of Foulks, and expressly affirms that he did not have any reason for not believing that his statements were true.

IV. Another vital proposition in the case is that the defendant, in his answer, pleaded actual fraud, while the opinion of Justice Belknap proceeds upon the theory of constructive fraud. The allegation in the answer is specific, that Foulks made false representations to defendant "with knowledge that the said representations were false and with intent to deceive defendant and fraudulently induce him thereby to subscribe to the capital stock of the plaintiff corporation."

V. The practical effect of the opinion of Justice Belknap is to determine this case adversely to the respondent upon the testimony of persons as to a transaction with a party who

is dead.    Section 379 of the Act to regulate proceedings in civil cases, approved March 8, 1869, as amended in 1897 (Sec. 3474, Com. Laws, 1900), provides: "No person shall be allowed to testify under the provisions of Sections 376 and 377, when the other party to the transaction is dead,    *   *   * when the facts to be proven transpired before the death of such deceased person."

By the Court, BELKNAP, J.:

Action to collect a call upon a subscription to plaintiff's stock.

In his answer defendant, among other things, sets up, as an equitable defense to the action, that during the month of February, 1893, and prior to the 25th day of March, John P. Foulks falsely represented to the defendant and others that he was the inventor and the owner of a certain patent for an improvement in windmills, the letters patent of which had not been issued, but would shortly be issued, and when issued would cover all the mechanical features described in the answer in this case; that defendant, relying upon said representations, subscribed for a certain number of shares of the capital stock of the plaintiff; that defendant first learned upon the dates mentioned in the answer that the letters patent issued to Foulks, and subsequently assigned to plaintiff, did not embrace the mechanical principles claimed for it by Foulks in his representations or in his application for a patent.

At the trial the district court found that upon March 9, 1892, Mr. Foulks filed his application for a patent for an improvement in air motors, and appointed Dewey & Co., of San Francisco, Cal., and A. H. Evans & Co., of Washington, D. C., his attorneys to prosecute the same, and to alter or amend his specifications, to receive the letters patent when issued, and to transact all business in the patent office connected therewith; that upon December 27, 1892, the attorneys of Mr. Foulks transmitted to him a copy of a notice from the patent office to the effect that his application for a patent had been examined and allowed; that while his application was pending several amendments were made by his attorneys, but no reference thereto was made by the notice,

and Mr. Foulks was not informed of the particulars in which his application had been amended until after the patent was granted.

It was also found that until subsequent to July 15, 1893, Mr. Foulks believed, and did not have any reason for not believing, that his application for patent had not been allowed by the patent office as originally made and filed; that he believed his representations to the defendant as to the scope of the patent were true, and without any knowledge that they were untrue, and without intent to deceive. It was also found that the contents of the patent materially differed from the representations made concerning it by Mr. Foulks.

Upon these facts, the question is whether or not the representations were fraudulent in law.

The notification to Mr. Foulks that his application had been approved should be considered in connection with his authorization of Dewey & Co., of San Francisco, and A. H. Evans & Co.. of Washington, to alter or amend the specifications. Under the authority given his attorneys, no one could have known, prior to final action by the patent office, the extent to which the specifications had been altered or amended. He knew that amendments had been made. That fact may well have excited his inquiry, and investigation would have readily revealed the fact that the patent office had determined that Mr. Foulks' application infringed upon the Kirkwood patent, and that his attorneys had disclaimed all rights conflicting with it. Instead of making the inquiry which the circumstances suggested, he made no effort to inform himself further. Afterwards, when a patent was allowed, instead of ascertaining the extent to which his specifications had been altered or amended by his attorneys under his authority, he represented to defendant and others that a patent, according to the original specifications, had been granted. Manifestly, he did not know whether his statement were true or false, and he, or his successor in interest, is liable if he asserted them to be true not knowing whether they were true or false.

In *Bennett* v. *Judson*, 21 N. Y. 238, the question was whether representations could be deemed fraudulent unless they were known to be false. It was held that one who, without knowl-

edge of its truth or falsity, makes a material representation, is guilty of fraud, in legal contemplation, as much as if he knew it to be untrue.

The decision in *Bennett* v. *Judson* was subsequently qualified by the case of *Wakeman* v. *Dalley*, 51 N. Y. 35, to the extent that the injured party is not compelled to prove that the person making the representations knew them to be false. If he assume or intend to convey the impression that he has actual knowledge of their truth, when conscious that he has not such knowledge, it is enough. (*Railroad Co.* v. *Tyng*, 2 Hun, 321; *Wakeman* v. *Dalley*, 51 N. Y. 27.)

Judge Story states the rule applicable to this class of cases as follows: "Whether a party misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it was true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false, and, even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party." (Story, Eq. Jur. 193.)

"Accordingly," says Judge Cooley in his work on Torts (page 498), "when either of the two parties to a negotiation for the purchase of property makes material representations of matters which he avers or assumes to be within his own knowledge, with intent that the other party shall act upon them, and these representations are actually relied upon by the other party in completing the negotiation, and they prove to be false, to his injury, a court of equity will treat the case as one of fraud, and give the proper relief, although the party making the representations was not aware at the time of their falsity."

Again, at page 501: "There are numerous cases in which it has been held that if a person makes a material representation in relation to a matter susceptible of knowledge, in such a manner as to import positive knowledge of its truth or falsity, with intent that another should rely upon such representation, this is sufficient to establish against him a legal fraud, if the other does rely upon it and it proves untrue. The fraud here consists in the reckless assertion that that is

true of which the party knows nothing, and deceiving the other party thereby; and even the actual belief of the party in the truth of what he asserts is immaterial, unless he had some apparently good reason for his belief, such, for example, as the positive statements of others in whom he confided, and was innocent of any attempt to mislead, or unless his representations related to matters of opinion." See cases cited on page 501. (8 Am. & Eng. Ency. Law, p. 642.)

Judgment reversed, and cause remanded for new trial.

FITZGERALD, J.: I concur in the judgment.

MASSEY, C. J., being disqualified, did not participate.

BY THE COURT: Rehearing denied.